IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PUBLIC UTILITY    :
COMMISSION,
          Plaintiff           :

          vs.                 :    CIVIL NO. 1:CV-07-2002

DR. SAMUEL BODMAN, in his     :
official capacity as the
Secretary of Energy for the U.S.:
Department of Energy, et al.,
          Defendants          :


NATIONAL WILDLIFE FEDERATION,  :
et al.,
          Plaintiffs          :

          vs.                 :    CIVIL NO. 1:CV-08-0091

U. S. DEPARTMENT OF ENERGY,    :
et al.,
          Defendants          :


PIEDMONT ENVIRONMENTAL COUNCIL, :
et al.,
          Plaintiffs          :

          vs.                 :    CIVIL NO. 1:CV-08-0093

U. S. DEPARTMENT OF ENERGY,    :
et al.,
          Defendants          :


*M E M O R A N D U M*


I.    *Introduction*

        We consolidated these three cases because they present

common issues of law. We will treat the plaintiffs and the

defendants collectively. The plaintiffs are challenging the

order of the Department of Energy (DOE) designating the Mid-
Atlantic Corridor. The designation would permit the construction
of electrical transmission lines over the objection of the
states in which the lines would be located. Under the applicable
law, the Energy Policy Act of 2005, DOE was supposed to have
based the designation on, among other factors, the interests of
national energy independence, national defense, and homeland
security. The complaints allege that in making the designation
DOE failed to comply with that law, along with other federal
laws, including environmental ones.

We are considering the defendants' motions to dismiss
the three complaints for lack of jurisdiction under Fed. R. Civ.
P. 12(b)(1). Defendants argue that jurisdiction to review DOE's
order is exclusively in the courts of appeals under section 313
of the Federal Power Act, 16 U.S.C. § 825*l*(b). In opposition,
the plaintiffs argue that jurisdiction is exclusively in the
district courts under section 317 of the Federal Power Act, 16
U.S.C. § 825p.

Defendants also argue in regard to plaintiff,
Pennsylvania Public Utility Commission's, complaint that its
claims are not yet ripe because any transmission-line
construction must first be approved by the Federal Energy
Regulatory Commission (FERC).

We need not deal with the ripeness argument because we
agree with the defendants that we lack jurisdiction to review

DOE's order and that the plaintiffs must seek review in an appropriate court of appeals.[1]

II.   *Background*

In the Energy Policy Act of 2005, P.L. No. 109-58, 119 Stat. 594, Congress amended the Federal Power Act (FPA) by adding new section 216, codified at 16 U.S.C. § 824p. In pertinent part, this section requires the Secretary of Energy "in consultation with affected States" to "conduct a study of electric transmission congestion." *Id.*, § 824p(a)(1). After doing so, and after consultation with interested parties, including affected states, "the Secretary shall issue a report, based on the study, which may designate any geographic area experiencing electric energy transmission capacity constraints or congestion that adversely affects consumers as a national interest electric transmission corridor." *Id.*, § 824p(a)(2).[2]

---

[1] The plaintiffs' briefs in *Nat'l Wildlife Federation* and *Piedmont Environmental Council* are identical. When quoting a plaintiff argument, we will quote from the brief in *Nat'l Wildlife Federation*.

[2] Section 824p(a)(4) provides that in making that designation, "the Secretary may consider whether":

   (A) the economic vitality and development of the corridor, or the end markets served by the corridor, may be constrained by lack of adequate or reasonably priced electricity;

   (B)(i) economic growth in the corridor, or the end markets served by the corridor, may be jeopardized by reliance on limited sources of energy; and

      (ii) a diversification of supply is warranted;

As presented in the defendants' brief in support of their motion to dismiss in *Nat'l Wildlife Federation*,[3] on May 7, 2007, DOE's Office of Electricity Delivery and Energy Reliability published its Draft National Interest Electric Transmission Corridor Designations ("Draft Report"). *See* 72 Fed. Reg. 25838 (May 7, 2007). In that Draft Report, the Secretary preliminarily found that the Mid-Atlantic region was critically congested and warranted designation as a National Corridor. *Id.* at 25884-96. The Mid-Atlantic Corridor includes fifty-two of the sixty-seven counties in Pennsylvania. 72 Fed. Reg. at 25909; *see also* 72 Fed. Reg. at 31571.

Thereafter, DOE opened a 60-day comment period and held public meetings across the country. *See* 72 Fed. Reg. at 25838. DOE received numerous public comments, including comments submitted by at least three of the Plaintiffs, regarding the proposed designation of the Mid-Atlantic Corridor. *See*, *e.g.*, October 5, 2007, Report and Order, 72 Fed. Reg. 56992, 57002 and n.54 (referring to comments by Pennsylvania Public Utility

---

(C) the energy independence of the United States would be served by the designation;

(D) the designation would be in the interest of national energy policy; and

(E) the designation would enhance national defense and homeland security.

[3] In substantial part, the factual statements in the next three paragraphs are quotations from Defendants' supporting brief in *Nat'l Wildlife Federation* at pages 4-5. We omit some footnotes.

Commission and Piedmont Environmental Council); 57003 n.58; 57011 n.84 and 57023 (referring to comments by the Sierra Club).

In its October 5, 2007, Report and Order, DOE retained the Mid-Atlantic Corridor designation without modification. *See id.* at 56992. DOE stated that it would consider as parties to the proceedings all persons or entities who had submitted written comments in accordance with the procedure outlined in its May 7, 2007. *See id.* at 57000.

Following the issuance of DOE's October 5, 2007, Order, various groups and individuals petitioned DOE for rehearing under 16 U.S.C.§ 825*l*(a), raising, among other issues, the same types of claims as those in Plaintiffs' complaint. On December 7, 2007, DOE entered an order granting rehearing for the purpose of giving further consideration to all timely filed requests challenging the Mid-Atlantic designation. *See* 72 Fed. Reg. 69202 (Dec. 7, 2007). On March 11, 2008, DOE issued an order declining to reconsider the designation of the Mid-Atlantic Corridor. *See* 73 Fed. Reg. 12959 (March 11, 2008).[4]

After DOE issued its order, petitions for review were filed in the United States Courts of Appeals for the Fourth and Second Circuits challenging the designation of the Mid-Atlantic Corridor. In the Second Circuit, the petitioner was the

---

[4] In the same order, DOE declined to reconsider its designation of the Southwest Corridor. A challenge to that designation is in the United States District Court for the Eastern District of California, *see Ctr. for Biological Diversity v. Dep't of Energy*, No. 08-CV-0168 (E.D. Cal.), where the defendants have raised the same jurisdictional issue.

Pennsylvania Public Utility Commission, one of the plaintiffs before this court. *See Pa. Pub. Util. Comm'n v. U.S. Dep't of Energy*, No. 08-1216-AG (2d Cir.)(filed March 14, 2008). *See also Virginia v. U.S. Dep't of Energy*, No. 08-1341 (4th Cir.)(filed March 20, 2008); and *New York v. U.S. Dep't of Energy*, No. 08-1283-AG (2d Cir.)(filed March 17, 2008).[5]

In the three cases filed in this court, the plaintiffs have alleged that DOE violated section 824p, and other federal laws: the Endangered Species Act, 16 U.S.C. § 1531 et seq.; the National Environmental Policy Act, 42 U.S.C. § 4321, et seq.; the National Historic Preservation Act, 16 U.S.C. § 470f; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

The changing nature of the federal government's statutory framework for handling the country's energy needs is relevant to the jurisdictional issue, so we briefly recite it here, taking it from the plaintiffs' opposition briefs.

The FPA created the Federal Power Commission (the "FPC") in 1920. The FPC had the authority to issue licenses to operate and maintain dams, water conduits, reservoirs, power houses, transmission lines and related facilities. 16 U.S.C. § 797(e). The Department of Energy Organization Act of 1977 (the

---

[5] A petition for review was also filed in the Ninth Circuit. *See Wilderness Soc'y v. U.S. Dep't of Energy*, No. 08-71074 (9th Cir.) (filed March 13, 2008). "On April 10, 2008, the Judicial Panel on Multidistrict Litigation randomly assigned the Ninth Circuit as the circuit in which the record is to be filed. *See In re U.S. Dep't of Energy*, RTC No. 98 (J.P.M.L. April 10, 2008) (Consol. Ord.) (attached as Defs.' Ex. A)." (Doc. 22, the defendants' reply brief, p. 2). the Fourth Circuit was not included in this designation.

"DOE Act") abolished the FPC and created the cabinet-level Department of Energy. It also created the Federal Energy Regulatory Commission (FERC), placing FERC within DOE. FERC inherited the FPC's functions of issuing licences to build transmission lines and the other facilities listed in section 797(e). *See* 42 U.S.C. § 7172(a)(1). DOE inherited the functions of the FPC not otherwise transferred to FERC. *See* 42 U.S.C. § 7151(b). DOE inherited still other functions assigned to other agencies.

The DOE Act did not contain a section dealing with judicial review. Instead, the act provided that judicial review would be as specified in the statute conferring functions on DOE or FERC or as specified in the statute from which DOE or FERC inherited certain functions as part of the DOE Act's consolidation of authority in DOE. Specifically, as codified at 42 U.S.C. § 7192, the DOE Act provided, in pertinent part, as follows:

(a) Agency action

Judicial review of agency action taken under any law the functions of which are vested by law in, or transferred or delegated to the Secretary, the Commission or any officer, employee, or component of the Department shall, notwithstanding such vesting, transfer, or delegation, be made in the manner specified in or for such law.

(b) Review by district court of United States; removal

Notwithstanding the amount in controversy, the district courts of the United States

> shall have exclusive original jurisdiction
> of all other cases or controversies arising
> exclusively under this chapter, or under
> rules, regulations, or orders issued
> exclusively thereunder, . . .

42 U.S.C. § 7192. Subsection (b) does not apply here because the

plaintiffs' claims do not arise under the DOE Act.


III.  *Discussion*

    A.  *Jurisdiction is Exclusively in the Court*
       *of Appeals Under 16 U.S.C. § 825l by Virtue*
       *of 42 U.S.C. § 7192(a)*

The defendants argue that jurisdiction over the

plaintiffs' challenge to DOE's order designating the Mid-

Atlantic Corridor is exclusively in the courts of appeals under

section 313 of the FPA, 16 U.S.C. § 825*l*, by virtue of 42 U.S.C.

§ 7192(a). In pertinent part, section 825*l*(a) provides as

follows:

> Any person, electric utility, State,
> municipality, or State commission aggrieved
> by an order issued by the Commission in a
> proceeding under this chapter to which such
> person, electric utility, State,
> municipality, or State commission is a party
> may apply for a rehearing within thirty days
> after the issuance of such order. . . .

If the "Commission" denies rehearing, then under section

825*l*(b), judicial review may be had in a court of appeals. In

pertinent part, section 825*l*(b) states as follows:

> Any party to a proceeding under this chapter
> aggrieved by an order issued by the
> Commission in such proceeding may obtain a
> review of such order in the United States
> Court of Appeals for any circuit wherein the

> licensee or public utility to which the
> order relates is located or has its
> principal place of business, or in the
> United States Court of Appeals for the
> District of Columbia, by filing in such
> court, within sixty days after the order of
> the Commission upon the application for
> rehearing, a written petition praying that
> the order of the Commission be modified or
> set aside in whole or in part. . . . Upon
> the filing of such petition such court shall
> have jurisdiction, which upon the filing of
> the record with it shall be exclusive, to
> affirm, modify, or set aside such order in
> whole or in part. . . .

The defendants recognize that this section speaks about a

"Commission" order but assert that section 7192(a) makes it

applicable to a DOE order issued under section 216 of the FPA,

16 U.S.C. § 824p because of section 7192(a). That section

broadens the DOE entities whose decisions are subject to review

under section 825*l*(b) by providing that "[j]udicial review of

agency action taken under any law the functions of which are

vested by law in, or transferred or delegated to the Secretary,

the Commission or any officer, employee, or component of the

Department shall, notwithstanding such vesting . . . be made in

the manner specified in or for such law." As amended by the

Energy Policy Act of 2005, the FPA vested DOE with the authority

to issue orders designating national interest electric

transmission corridors, so-called national corridors. Hence,

parties seeking judicial review of such orders must proceed as

specified in the FPA, which means judicial review in a court of

appeals as provided in section 825*l*(b), with jurisdiction exclusively in that court.

The defendants cite in support cases that have held that jurisdiction to challenge FERC licensing decisions are exclusively in the courts of appeals under section 825*l*(b). *See, e.g., California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 910-11 (9th Cir. 1989)(under the express language of section 825*l*(b), exclusive jurisdiction over questions arising under FERC licensing orders is in the courts of appeals); *City of Tacoma v. Nat'l Marine Fisheries Serv.*, 383 F. Supp. 2d 89, 91-92 (D.D.C. 2005) (review of FERC licencing decisions is exclusively in the courts of appeals under section 825*l*(b)). Similarly, the defendants argue that here review of DOE's national corridor designations is exclusively in the courts of appeals under section 825*l*(b).

In opposition, the plaintiffs contend that section 825*l*(b) consistently refers to the "Commission," not the "Department" or the "Secretary." The statutory section thus could only be referring to FERC or the FPC. Hence, the plain language  of the section indicates there is no jurisdiction over decisions of DOE. In the court's view, this argument mistakenly looks past section 7192(a) and would also conflict with plaintiffs' acceptance of the fact that Section 825*l*(b) governs appeals of FERC decisions in licensing proceedings.

        The plaintiffs also argue that the defendants are misconstruing section 7192(a). As the plaintiffs see it, DOE's authority to designate national corridors was vested either by the Energy Policy Act of 2005 or by the FPA. However, the Energy Policy Act did not specify any manner of judicial review so that act could not be the source of judicial review of DOE's designation. As to the FPA, in section 825*l*, "Commission" would only be a reference to either the FPC or FERC so that law also provides no form of judicial review for a DOE determination "in the manner specified in and for such law," as required by section 7192(a).

        We reject the plaintiffs' argument. We need not discuss their point about the Energy Policy Act as the defendants' position does not depend on that act. The purpose of section 7192(a) is to provide for judicial review of functions not only transferred to DOE but also vested in DOE, FERC, "or any officer, employee, or component of the Department" in the manner specified for judicial review in the law vesting the function or in the law from which the function was transferred. The plaintiffs' argument would make important the entity that used to exercise that function, and hence named in the judicial-review provision of the relevant law, but section 7192(a) focuses on the manner of judicial review, which has nothing to do with the entity performing the function subject to that review, or which formerly performed the function. The

11

plaintiffs' interpretation of section 7192(a) would nullify that aim.

The plaintiffs offer other arguments as to why section 825*l* is not the proper avenue for judicial review of DOE's national corridor designations. First, section 825*l*(b) authorizes judicial review of orders after a "proceeding" by "a party to the proceeding," but there were no parties to the proceeding resulting in the October 5, 2007, Order. DOE followed only a notice-and-comment procedure. Second, another part of section 825*l*(b) provides that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive," meaning that section 825*l*(b) applies only to review of adjudicatory proceedings as the section directs the court of appeals to uphold the "findings of fact" "if supported by substantial evidence." According to the plaintiffs, this can only refer to "on the record" adjudicatory proceedings. Third, in *Fed. Power Comm'n v. Metro. Edison Co.*, 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938), the Supreme Court stated that the section was intended to grant review of evidentiary hearings after which findings of fact are rendered. As the Court stated, "The statute contemplates a case in which the Commission has taken evidence and made findings" . . . and relates to orders of a definitive character." *Id.*, 58 S.Ct. at 967.[6]

---

[6] The entire quotation that the plaintiffs rely on is as follows:

We reject the contention that orders made after notice-and-comment proceedings cannot be subject to judicial review under section 825*l*(b). In *Public Sys. v. FERC*, 606 F.2d 973 (D.C. Cir. 1979), the United States Court of Appeals for the District of Columbia reviewed a tax-allocation rule for interstate suppliers of gas and electricity adopted by the FPC following notice-and-comment proceedings. The court based judicial review on section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), a provision identical to section 825*l*(b), as the court observed. 606 F.2d at n.28. As the plaintiffs noted here for section 825*l*(b), section 19(b) also provided a substantial-evidence standard for findings of fact, but the court of appeals held that this language did "not support the distinction between orders derived from adjudications and those growing out of rulemaking." *Id.* at 606. *See also Mid-Tex Elec. Co-op. v. FERC*, 864 F.2d 156, 158 (D.C. Cir. 1988)(reviewing

---

The context in section 313(b) indicates the nature of the orders which are subject to review. Upon service of the petition for review, the Commission is to certify and file with the appellate court "a transcript of the record upon which the order complained of was entered." The statute contemplates a case in which the Commission has taken evidence and made findings. Its findings, if supported by evidence, are to be conclusive. The appellate court may order additional evidence to be taken by the Commission and the Commission may thereupon make modified or new findings. The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case.

*Id.*, 58 S.Ct. at 967.

under section 825*l*(b) a FERC rule adopted after notice-and-comment proceedings that dealt with recovery by electrical utilities of the cost of capital in construction); *Wisconsin Gas Co. v. FERC*, 770 F.2d 1144, 1168 (D.C. Cir. 1985)(in judicial review under section 19(b) of the Natural Gas Act, "the standard of substantial evidence may be satisfied by written submissions" rather than a trial-type hearing).

As for *Metro. Edison Co.*, *supra*, the Supreme Court did state that section 825*l*(b) was intended to provide review of orders rendered after evidentiary hearings, but the case actually dealt with whether a preliminary order requiring the respondent corporations to produce information at a hearing before the FPC was reviewable by the court of appeals under section 825*l*(b). The Supreme Court said no because the order was not a final one. In was in this context that the Court stated that section 825*l*(b) "contemplates a case in which the Commission has taken evidence and made findings," but more important was its statement that the "provision for review thus relates to orders of a definitive character dealing with the merits of a proceedings." This is how the Third Circuit has read *Metro. Edison Co.* at least twice. *See Cities of Newark, New Castle and Seaford v. FERC*, 763 F.2d 533, 540-41 (3d Cir. 1985)(stating that *Metro Edison Co.* requires that an agency order be final before it is reviewable in the court of appeals); *United Gas Pipe Line Co. v. FPC*, 206 F.2d 842, 845 (3d Cir.

1953)(under *Metro Edison Co.* order must be final before it is reviewable). Thus, *Metro. Edison Co.* is not authority for the proposition that section 825*l*(b) provides review only for trial-type adjudicatory proceedings.[7]

The plaintiffs next argue that section 825*l*(b) is the wrong judicial-review section because it provides that judicial review is available "in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business . . . ." The plaintiffs point out that DOE's order does not relate to any licensee or public utility; instead "it defines a massive corridor spanning six judicial circuits." (Doc. 21, *Nat'l Wildlife Federation* Br. in Opp'n at p. 13). However, we agree with the defendants that the order "relates to" licensees and public utilities within the corridor in the sense that it will affect their ability to construct new power lines. Hence, a petition for review could be filed in any circuit within the corridor. In any event, as the defendants also point out, section 825*l*(b) also provides that a party can always obtain review in the United States Court of Appeals for the District of Columbia. Hence, this provision as to where a party should seek review is not an obstacle to using section 825*l*(b).

---

[7] Arguably, the language is also ambiguous enough to encompass notice-and-comment proceedings. Such proceedings also produce a record and a definitive order. As for applying the substantial-evidence test in this context, *Public Sys.*, *supra*, 606 F.2d at 979-80, provides an approach.

The plaintiffs next argue that the DOE Act never authorized DOE to invoke the judicial review provision of section 825*l*(b) for functions created after passage of the act in 1977. In making this argument, the plaintiffs cite to two sections of the DOE Act. They first cite 42 U.S.C. § 7151(b), a part of the DOE Act dealing with the transfer of powers to DOE and FERC when DOE was being created. That section provides as follows:

> **(b)** Except as provided in subchapter IV of this chapter,[8] there are *transferred* to, and vested in, the Secretary *the function of the Federal Power Commission*, or of the members, officers, or components thereof. The Secretary may exercise any power described in section 7172(a)(2) of this title to the extent the Secretary determines such power to be necessary to the exercise of any function within his jurisdiction *pursuant to the preceding sentence*.

42 U.S.C. § 7151(b)(emphasis supplied by the plaintiffs)(footnote added). 42 U.S.C. § 7172(a)(2)(A) refers to the FERC's exercise of power and provides as follows:

> **(2)** The Commission may exercise any power under the following sections to the extent the Commission determines such power to be necessary to the exercise of any function within the jurisdiction of the Commission:
>
> **(A)** sections 4, 301, 302, 306 through 309, and 312 through 316 of the Federal Power Act;

The plaintiffs point out that subsection (a)(2)(A) authorizes the Secretary, by virtue of section 7151(b), to exercise powers

---

[8] Subchapter IV lists the functions transferred to FERC.

listed, in part, from section 312 through section 316 of the
FPA. This list encompasses section 313, but the plaintiffs argue
that section 7151(b) limits the exercise of these powers to
functions transferred in 1977 by way of the last five words of
section 7151(b)'s second sentence, which references the
preceding sentence's transfer of functions as of 1977. Because
DOE's authority to designate national corridors was not created
until 2005, the plaintiffs argue that DOE cannot exercise any
"power" to invoke judicial review under section 825*l*(b). The
plaintiffs contrast the language of section 7151(b) with the
parallel provision for FERC in section 7172(a)(2)(A). The latter
section lacks language referencing "the preceding sentence."

We reject this argument. Section 825*l*(b) is not a
power to be exercised by DOE or FERC. It is a judicial-review
provision. We find it of no moment that it was included in a
list in section 7172(a)(2)(A), and the language of section
7151(b) simply has no  bearing on the jurisdictional issue in
this case.

The plaintiffs' second citation, in support of the
argument that the DOE Act never authorized DOE to invoke the
judicial review provision of section 825*l*(b) for functions
created after passage of the act in 1977, is to 42 U.S.C. §
7297. That section provides as follows:

> With respect to any functions transferred by
> this chapter [the DOE Act] and exercised
> after October 1, 1977, reference in any
> other Federal law to any department,

> commission, or agency or any officer or
> office the functions of which are so
> transferred shall be deemed to refer to the
> Secretary, the Federal Energy Regulatory
> Commission, or other official or component
> of the Department in which this chapter
> vests such functions.

42 U.S.C. § 7297. Because this section provides that a reference "in any other Federal law" to any governmental entity "[w]ith respect to any functions transferred by" the DOE Act "and exercised after October 1, 1977," shall be considered a reference to the DOE component now exercising that function, the plaintiffs argue that this section limits a construction of section 825*l*(b) to judicial review of any action DOE took because of the transfer of functions in 1977. In the plaintiffs' view, when "DOE is exercising authorities created post-1977, jurisdiction is conferred by" 18 U.S.C. § 825p, discussed below. (Doc. 24, Plaintiffs' sur-reply brief at pp. 2-3).[9]

We reject this argument. Section 7297 deals with functions transferred by the DOE Act in 1977 and merely provides that references in other federal laws to the entities that formerly performed those transferred functions shall be considered as referring to the DOE components that now perform

---

[9] The plaintiffs also assert as part of this argument that jurisdiction is proper in the district court under 28 U.S.C. §§ 1331 and 1345. Section 1331, the general federal-question jurisdiction statute, does not apply if a more specific jurisdictional statute does, *see ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 518 (3d Cir. 1998), and we believe for reasons disclosed below that section 825*l*(b) applies here. Section 1345 only places jurisdiction in the district courts when the United States is a plaintiff, and the United States is not a plaintiff here.

the functions. It says nothing about functions that later laws might vest in DOE or a DOE component, or judicial review of any actions taken under that law. Indeed, as noted above, section 7192(a) deals specifically with judicial review of functions "vested" or "transferred" to DOE or a DOE component and provides that judicial review shall take place in the manner specified in the law vesting or transferring the function.

We turn now to the plaintiffs' claim that jurisdiction lies exclusively in the district courts under section 317 of the Federal Power Act, 16 U.S.C. § 825p. In pertinent part, section 825p reads as follows:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter [i.e. the FPA] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. . . . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this chapter.

16 U.S.C. § 825p.

19

The plaintiffs argue that section 825p applies because it broadly confers jurisdiction (and exclusive jurisdiction as well) on the district courts "of violations of this chapter," meaning the FPA, and they are alleging that DOE violated new section 216 of the FPA, codified at 16 U.S.C. § 824p, in issuing its order designating the Mid-Atlantic Corridor. They point out that, unlike section 825*l*(b), the section contains no language limiting jurisdiction to "orders issued by the 'Commission' after a 'proceeding' involving 'a licensee or public utility.'" (Doc. 24, Opp'n Br. at 17). They also rely on the last sentence of section 825p as providing support for their position that section 825p "contemplates cases by private parties "against the government" because that sentence provides that "[n]o costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this chapter."

The last sentence does not assist the plaintiffs. The sentence does not bear on the jurisdictional scope of section 825p. Instead, it deals with assessment of costs and denies it against the "Commission" in judicial proceedings under "this chapter," the FPA, not just section 825p. In fact, it has been used to deny costs to litigants in section 825*l*(b) proceedings against FERC. *See Hirschey v. FERC*, 760 F.2d 305, 307 (D.C. Cir. 1985).

As for the other part of the argument, applying section 7192(a), as we believe we should, we think section

825*l*(b) is the appropriate jurisdictional section. As discussed, 42 U.S.C. § 7192(a) makes section 825*l*(b) applicable to DOE orders issued under the FPA, despite the unchanged reference in section 825*l*(b) to orders issued by the "Commission" (unchanged even from the time when the "Commission" was the FPC), This would include orders issued under the amendment to the FPA codified at 16 U.S.C. § 824p made by the Energy Policy Act of 2005. In the language of section 825*l*(b), the plaintiffs are parties "aggrieved by an order" issued by DOE since they claim DOE acted in violation of section 824p. Additionally, as we have already explained, jurisdiction in the court of appeals is not defeated on the basis that the order arose from a notice-and-comment proceeding, rather than a trial-type one. Finally, we believe the defendants correctly analogize this case to one that challenges a FERC licensing order. Such a challenge goes to the court of appeals under section 825*l*(b), *see Yeutter*, *supra*, 887 F.2d at 910-11; *Nat'l Marine Fisheries Serv.*, *supra*, 383 F. Supp. 2d at 91-92 (review of FERC licencing decisions is exclusively in the courts of appeals under section 825*l*(b)), while a suit alleging a violation of a FERC license is in the district court. *See United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 982 (E.D. Cal. 2004). The plaintiffs are not alleging a violation of DOE's order designating the Mid-Atlantic Corridor; they are challenging the order itself.

But even if there were some uncertainty as to whether jurisdiction is conferred by section 825*l*(b) or section 825p, as the defendants point out, certain principles of law dealing with jurisdiction also favor choosing section 825*l*(b). First, "'where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter.'" *General Elec. Uranium Mgmt. Corp. v. DOE*, 764 F.2d 896, 903 (D.C. Cir. 1985)(quoted case omitted). This "avoids duplicative review" in the district court and then in the court of appeals, "with the attendant delay and expense involved." *Id.* (quoted case omitted). Second, since there is no need for additional fact finding here, "the court of appeals is fully able to consider this administrative record, without input from the district court . . . ." *Id.* (cited case omitted). *See also Tennessee v. Herrington*, 806 F.2d 642, 650 (6th Cir. 1986)(citing *General Elec. Uranium Mgmt. Corp.* and these two principles in part in finding jurisdiction in the court of appeals for a DOE determination under the Nuclear Waste Policy Act of 1982). *See generally*, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985)(under the Hobbs Act finding jurisdiction in the court of appeals under an ambiguous jurisdictional provision for review of a Nuclear Regulatory Commission determination, noting that "[t]he factfinding capacity of the district court is . . . typically unnecessary to judicial review of agency

decisionmaking" and that "[p]lacing initial review in the
district court . . . requir[es] duplication of the identical
task in the district court and in the court of appeals").

We thus conclude that we lack jurisdiction and will
grant the defendants' motions to dismiss. We note that the
alleged violations of other federal laws, such as federal
environmental laws, would not displace the jurisdiction of the
courts of appeals. *See Yeutter*, *supra*, 887 F.2d at 911-12.

We will issue an appropriate order.


                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge

Date: August 21, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


PENNSYLVANIA PUBLIC UTILITY        :
COMMISSION,
        Plaintiff              :

        vs.                     :   CIVIL NO. 1:CV-07-2002

DR. SAMUEL BODMAN, in his          :
official capacity as the
Secretary of Energy for the U.S.:
Department of Energy, et al.,
        Defendants             :



NATIONAL WILDLIFE FEDERATION,       :
et al.,
        Plaintiffs             :

        vs.                     :   CIVIL NO. 1:CV-08-0091

U. S. DEPARTMENT OF ENERGY,         :
et al.,
        Defendants             :



PIEDMONT ENVIRONMENTAL COUNCIL, :
et al.,
        Plaintiffs             :

        vs.                     :   CIVIL NO. 1:CV-08-0093

U. S. DEPARTMENT OF ENERGY,         :
et al.,
        Defendants             :


*O R D E R*


        AND NOW, this 21st day of August, 2008, it is ordered
that:

        1. The defendants' motions (docs. 5, 17,
20) to dismiss the complaints under Fed. R.

Civ. P. 12(b)(1) for lack of jurisdiction
are hereby granted.

    2. The Clerk of Court shall close these
cases.

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge